Littleton, Judge,
dissenting: The question presented in this case is whether under the provisions of art. 9 of the contract the Government is entitled to liquidated damages *682 for delay until completion of the work called for by the contract; and, also, the actual excess costs of completing the contract, when the contractor without any action by or fault on the part of the Government discontinued work thereunder and notified the Government, upon being ordered to proceed with the work and prosecute it to completion, that it could not continue with and prosecute the work or any part thereof to completion. Under that article and art. 1 the contractor had expressly promised and agreed to diligently prosecute the work to completion, even though it could not complete it within the time fixed by the contract if the Government did not, before completion, exercise the choice to terminate the right to proceed while the contractor was continuing with construction.
The majority opinion holds that the answer to this question is governed by the opinion in United States v. American Surety Co., 322 U. S. 96, 100, 101, and that under that opinion the Government lost its right or waived its claim to liquidated damages under art. 9 by reason of a notice from the contracting officer on June 17,1937 (finding 9), notwithstanding that notice was given only • because the contractor had abandoned the work and committed a total breach of the contract on May 11, 1937. The notice advised the contractor and the surety, who had also refused to complete, that their right to proceed was terminated by reason of the previous notice of the contractor that it could not comply with the order of the contracting officer to proceed and of its inability to complete the remainder of the work. It seems obvious that if, in the circumstances, the surety, upon receipt of the Government’s notice to it of May 19, 1937, had elected to complete the work the Government clearly would have been entitled not only to liquidated damages to the date of the contractor’s abandonment of the work but, also, until the surety had completad it. The surety may not avoid liability by declining to complete. When the surety declined to complete, the Government’s notice of June 17,1937, was no more than a notice that it accepted a situation which it could not prevent and which it did not bring about. In reality the notice of June 17 was the kind of notice that would have been given on account of a total breach if the contract had *683 not contained the option to terminate given the Government by art. 9. In reality, also, this notice was based as it stated, on the ground of abandonment of the work by the contractor, and not on the ground that the Government had become dissatisfied with the progress of the contractor after the completion date fixed in the contract had passed. Nothing whatever was said in the notice about the progress of the contract being unsatisfactory. The only option to terminate the right to proceed which the Government had at the time the contractor abandoned the contract was its dissatisfaction with the progress which the contractor might be making, and not its dissatisfaction with the abandonment of the work by the contractor.
The question thus presented was not present and could not, under the facts, arise in the case of United States v. American Surety Co., supra. It was not considered or mentioned by the court, and was not, of course, decided. I do not interpret the language of the Supreme Court in the American Surety Company case in answer to the contention there made by the Government in support of its claim on the facts, in that case for liquidated damages to the date of termination under art. 9 as indicating an intention to decide the issue which is here presented. In that case the court held that as a part of the bargain for the right to terminate the contractor’s right to proceed while he was continuing with the work the Government, by the language of art. 9, agreed to waive its right to liquidated damages in the event it exercised the option to terminate the right to proceed because of continuous delay, and that this waiver was the legal consequence which followed from the exercise of that choice. The contractor reserved no choice to abandon the work in the event he could not complete it on time, or was thereafter delayed, and the court did not indicate that a waiver of liquidated damages would.be the legal consequence of such an act by the contractor.
In the American Surety Company case the contract completion date as extended was June 20,1933. The contractor failed to complete the work by the extended date but the Government did not, under the first option given by art. 9, take any action to terminate the contractor’s right to proceed *684 prior to the completion date because of the contractor’s refusal or failure to prosecute the work with such diligence as would insure its completion by the completion date as extended. When the completion date arrived and the work had not been completed, the Government still took no action to terminate the contractor’s right to proceed further because of its failure to complete the work on time; not having done so, the contractor was compelled by art. 9 to continue with the work and complete it. Instead of terminating the right of the contractor to proceed, prior to or on the completion date, the Government, as it had a right to do under the contract, permitted the contractor to continue with the work, and the contractor did so, as it was required to do by the provisions of art. 9 so long as the Government did not thereafter terminate its right to proceed. • While the contractor was thus continuing construction, the Government on July 20, 1934, thirteen months after the contract completion date as extended, and without any notice or indication from the contractor that it would abandon the contract or that it could not or would not complete the work called for, terminated the right to proceed with completion of the incomplete portion of the contract specifically under authority of art. 9 because of dissatisfaction with the continuous delays of the contractor. This action was initiated by the Government in the exercise of its option, and not by the contractor. The Government was not compelled to terminate. It had a choice. By taking such action the Government by the terms of the contract waived its right to claim the liquidated damages and was required, instead, to prove actual damages, if any, for delay by the contractor, and the excess costs of completion, as the Circuit Court of Appeals held, 136 Fed. (2d) 431. The issued thus presented and decided was stated by the Supreme Court to be “The Government’s right to liquidated damages under these circumstances.” Under the facts in this case the question is just the opposite to that which the Court decided in the American /Surety Company case, and is whether the Government is entitled to collect liquidated damages for delay where the contractor, not having completed on time, undertakes to terminate its own right to *685 proceed fifty-nine days after the completion date by notifying the Government, upon being ordered to resume operations and proceed with construction to completion, that he is unable to proceed with the work, or any part thereof, and prosecute the same to completion. Plaintiff’s answer to the Government’s claim that this total breach entitled the Government to the agreed liquidated damages under the express language of art. 9 is that the contracting officer mentioned art. 9, in his notice of June 17.
In the American Surety case the Court appears to have emphasized the fact that under the plain language of art. 9 liquidated damages may not be claimed where the Government by its voluntary act taken under the choice given by art. 9 stopped the contractor and terminated his right to proceed while he was going on with the work, and, except for such termination, doubtless would have completed it so far as appears from the facts in that case. By the same token, it seems clear also under the plain language of art. 9 that if the contractor, without any action by the Government, stops work after the completion date and notifies the Government, in reply to an order to continue, that it cannot or will not proceed further and complete the work the Government is entitled to stipulated liquidated damages. In such a case there has been no waiver.
Plaintiff also relies upon the opinion of this court in Commercial Casualty Insurance Company, a Corporation, v. United States, 83 C. Cls 367, 372-6. In that case the completion date was May 28, 1930. On April 10, 1930, the contractor telegraphed the contracting officer that it was unable to proceed with its contract, and that the Government should take the necessary means to complete it. The contracting officer on April 15 wired the contractor that “The Bureau has been advised that you have stopped work under this contract. In accordance with art. 9 of the contract you are hereby notified that your right to proceed with this work is terminated.” On the same day a copy of this telegram was sent to the surety and the surety elected to complete the work. It did so, but was forty-two days late on the basis of the delay properly chargeable to it.
*686 In that case both parties and the Court appear to have treated the contracting officer’s telegram of April 15 as a termination of the right to proceed strictly under the choice given the Government by art. 9, and the language used by the contracting officer gave some justification for that view. However; it seems to me upon further consideration this action was not the sort of termination as art. 9 contemplated as a condition to the waiver of liquidated damages. It was not voluntarily taken by the Government, but because the contractor had abandoned the work. In any event the issue raised and argued in the instant case was not presented and argued in that case. Moreover, the decision in that case is not necessarily in conflict with the view I take under the facts in the present case. In the former case the actions of the contractor and the contracting officer, if governed by Article 9, arose under the only option expressly given by art. 9 of the contract in that case to the effect that “If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in Article 1, * * * the Government may, * * * terminate his right to proceed with the work or such part of the work as to which there has been delay.” The Court interpreted the words “refuses or fails to prosecute the work” to mean that if the contractor abandoned the work altogether and the Government notified him that his right to proceed was terminated on that account, the Government could not claim liquidated damages. Whether the particular provision above referred to should be so interpreted is not involved in the present case, because the actions of the parties with which we are here concerned occurred after the date for completion had passed, and if it should be assumed that the Government did terminate the right of the contractor to proceed in the present case under such circumstances and in such a way as to bring its action within the provisions of art. 9, it acted under a different provision in art. 9 which gave it a third option which was not expressly written into art. 9 of the contract before the Court in the Commercial Casualty Insurance Company case. As hereinafter pointed out, the Government could not, under the language *687 of art. 9 of tbe contract in this case, terminate the contractor’s right to proceed through the exercise of the choice given under the first option after the completion date had passed. If, therefore, it did terminate the right to proceed within the meaning of art. 9, it acted under an option which expressly contemplated only continuous delay by the contractor after the completion date and not his abandonment of the work by refusing to continue with it to completion.
I am of opinion that under the rationale of the opinion in the American Surety Company case, the Government is entitled to recover liquidated damages in this case from the completion date to the date on which the work could have been completed by the Government by the exercise of reasonable diligence, together with actual excess costs to the Government upon completion of that portion of the contract remaining incomplete after the total breach of the contract by the contractor and the refusal of the surety to complete the work. The majority opinion, like plaintiff’s argument, emphasizes the reference in the Government’s notice of June 17 to art. 9. and gives little, if any, effect to the statement in that notice of the ground on which the notice was based, i. e., that the contractor had given notice that it would not proceed further with the work when ordered to do so by the contracting officer.
This conclusion is in conflict with the decision in Continental Casualty Co. v. United States, 113 Fed. (2d) 284, 286, affirming 29 Fed. Supp. 598; certiorari denied November 12, 1940, Continental Casualty Co. v. United States, 311 U. S. 696. In that case, which involved a contract for certain levee construction work, the completion dates for the items of levee work called for were February 27, 1933, as to certain items and September 25, 1933, as to other items. The contract provided for liquidated damages at the rate of twenty dollars a day for delay of the contractor beyond the time fixed for completion. Although the progress of the contractor was slow and unsatisfactory, the contracting officer did not terminate its right to proceed but gave the contractor every assistance through repeated suggestions and instructions in an effort to facilitate completion of the work by the time stipulated in the contract. The work was not completed *688 on time, but tbe contractor continued with the work as required by art. 9. The contracting officer continued with his suggestions and instructions as before and indicated no intention of terminating the right to proceed to completion. The contractor continued construction until March 16, 1984, nearly thirteen months after the completion date of certain items and nearly six months after completion date of the other items, at which time it filed a petition in bankruptcy, which, as found by the District Court (29 Fed. Supp. 598, 599), operated as a default of the contractor under the terms and conditions of the contract. On the following day, March 17.1934, the contracting officer officially placed the contractor in default on the ground stated and notified it that its right to proceed with the work was terminated under the provisions of art. 9. Art. 9 of course contained no reference to such a default by the contractor. At the same time this notice was given to the contractor, the contracting officer notified the surety of the default by the contractor and asked the surety whether or not it desired to complete the work in accordance with the terms of the original contract. The surety replied May 22 stating that it desired to complete the work in accordance with the terms of the contract, but it did not do so. The surety did not at any time commence operations under the contract. Instead, on May 2, 1934, the surety notified the Government that it declined to complete the contract, claiming that it had been prejudiced by the delay. The Court found that the Government had caused no delay. The Government thereupon advertised for bids for completion of the work left incomplete by the original contractor, and a contract for completion was let September 11, 1934. The several items of , work remaining unfinished under the original contract were completed October 5 and 22.1934, and October 22,1935.
The Government brought suit to recover from the surety liquidated damages in the amount of $620 for delay from the contract completion date to date on which the contractor, while proceeding with the work, defaulted under the contract by the filing of a petition in bankruptcy and, also, the actual excess costs of completing the work of $26,154.70. Both the District Court and the Court of Appeals héld that the Gov *689 ernment was entitled to liquidated damages and excess completion costs claimed on the ground that at the time the contractor defaulted in performance of the contract work, by filing a petition in bankruptcy, and the contracting officer declared it in default on that ground, the rights of the Government and the liability of the surety under the contract immediately became fixed.
Under the facts in the Continental Surety- Company case I am of opinion that the Government might have claimed, as it does claim under the facts in this case, the liquidated damages specified in the contract for delay from the date fixed for completion until the work was completed; and, also, in addition, the actual excess costs to the Government of completing the unfinished work after default of the contractor in a manner and under circumstances not contemplated by art. 9 and not due to any act of the Government. This rule was approved under a liquidated clause of a contract between private parties where the contractor, and not the other party, stopped work before completion. Southern Pacific Co. v. Globe Indemnity Co. et al., 21 Fed. (2d) 288, 290, 291.
What the Government did in the instant case was in substance and effect no different from what it would normally have done had art. 9 simply provided for a completion date and for liquidated damages thereafter until completion by the contractor if, before completion the contractor had stopped work and abandoned the contract. In such a case notice from the Government holding the contractor in default for refusing to complete would not be the exercise of a choice but the normal action by one party where the other is guilty of a total breach. The notice by the Government terminating the right to proceed which will constitute a waiver of liquidated damages under art. 9 must be a notice which is initiated by the Government under a choice given it and not the result of action first taken by the contract which had the effect of terminating its own right to proceed. The general rule is that where one party to a contract is guilty of a partial breach, the other party may elect to continue performance to completion and sue for damages, liquidated or otherwise, depending upon the terms *690 of the contract. Under the terms of the standard Government contract if the Government elects not to perform further because of a partial breach due to delay (and failure to complete on time or to make satisfactory progress thereafter is only a partial breach) and terminates the right of the contractor to proceed to completion, except for which the contractor would be required to complete, the Government by the provisions of the contract which provides for all excess costs in such a case waives its right to- liquidated damages, but may claim actual damages for failure to complete on time.
In the instant case the facts show that on January 6 and May 11, 1937, the contractor, Elkas Construction Co., Inc., on whose bond plaintiff was surety, was 59 days late with the two items of levee construction work called for by the contract on the basis of delay properly chargeable to the contractor, and this is admitted. The contracting officer authorized the contractor to suspend operations on January 6, 1937, as contemplated by art. 9, because of unusual flood conditions. Although the contractor was 59 days late, the contracting officer shortly prior to May 11, 1937, instead of terminating the contractor’s right to proceed ordered the contractor to resume operations and proceed with completion of the work. Instead of resuming operations upon receipt of this notice and proceeding to complete the work as it had agreed in arts. 1 and 9, the contractor on May 11 declined to proceed further, abandoned the work, and notified the contracting officer that because of financial difficulties it was unable to proceed with the work or any remaining part thereof to completion. Thereupon, instead of saying anything to the contractor, the contracting officer by his letter of May 17,1937, to the surety treated this notice of the contractor as a default not due to any action by the Government under art. 9 and notified the surety that the contractor had “defaulted the contract.” If the surety had elected to complete, no notice to the contractor would have been necessary. However, the surety declined to complete, and on June 17 (the contractor in the meantime having indicated no intention of resuming operations, the contracting officer notified the contractor and the surety that *691 their right to proceed with the work had been terminated on the ground that the contractor had advised that it was unable to complete and the surety had declined to complete. In the majority opinion the court says that “Upon the contractor’s default in the performance of its contract the defendant terminated its right to proceed and let a contract to another contractor for completion of the work.” This is an incomplete statement. What happened was that the contractor committed a total breach of the contract when it notified the Government that it could not complete the work. The contractor and not the Government therefore terminated the right to proceed. The Government simply confirmed this. Art. 9 did not give the contractor this right. It could not thereby void liquidated damages.
Although the contracting officer in this notice stated that the right of the contractor and the surety to proceed was terminated under art. 9, this reference to art. 9 cannot be taken literally because both the contractor and the surety had already refused to proceed and the contracting officer specifically qualified his reference to art. 9 by stating that his action had been taken because the contractor had defaulted the contract. I think it is clear under the plain language of the contract that this was not a termination by the Government of the right of the contractor to proceed for failure to complete on time, or for lack of diligent prosecution of the work as was contemplated by art. 9, and as would constitute a waiver by the Government of liquidated damages of twenty dollars a day on each item of work until completion after the Government elected to complete, and, having so elected, proceeded with reasonable promptness. If the Government had not elected to have the work completed, as- it clearly had the right to do, United States v. U. S. Fidelity and Guaranty Co., 236 U. S. 512, 526, it seems clear from the facts that under the notice holding the contractor in default the Government would be entitled to the stipulated damages for 59-days’ delay of the contractor to date of its default on May 11,1937. The fact that it elected to complete, as it also had the right to do, does not change the rule.
By abandoning the contract, the contractor and its surety *692 in any event became liable at least for $1,180 liquidated damages for the 59-days’ delay to January 6, 1937, and the excess costs of completion and actual damages sustained by reason of delay until the Government completed the unfinished work. The majority opinion does not decide whether the Government is entitled to actual damages for delay where the right to proceed has been terminated, but we have consistently held that where the Government terminates the right to proceed strictly under the authority and provisions of art. 9, because of dela}*- while the contractor is continuing with construction and elects to complete the work, the Government is entitled to recover actual damages for delay properly chargeable to the contractor from the contract completion date to date of termination, as well as actual damages to date of completion; and, also, the actual excess costs of completion over the original contract price. John M. Whelan & Sons, Inc. v. United States, 98 C. Cls. 601; Modern Industrial Bank v. United States, C. Cls. No. 45602 (101 C. Cls. 808). The same rule was approved and applied in American Surety Co. v. United States, 136 Fed. (2d) 437, 439. The question raised in the present case by the Government did, under the facts, lurk in the record in the John M. Whelan & Sons, Inc., case, supra, but it was not raised or considered.
Under the standard construction contract in suit, the contractor is nowhere given the right to terminate his own right to proceed and thereby escape liquidated damages merely because the Government thereafter sends him a notice holding him in default. Before the contractor can escape paying liquidated damages the Government must take such action as will constitute a waiver of its right to claim liquidated damages. The options to terminate the contractor’s right to proceed if he (1) does not make such progress as will insure completion on time or (2), fails to complete the work on time, or (3), thereafter fails to make satisfactory progress while he is continuing the work, are by the plain terms of the contract given only,to the Government. In this case the Government did not at any time exercise any of these options within the meaning and purpose of *693 the language of art. 9, and at no time prior to the contractor’s default, in a manner not contemplated by the contract, did the Government indicate that it had any intention of terminating the right of the contractor to proceed. I think it is an unwarranted interpretation of art. 9 to say that where the Government notifies the contractor, after the latter has abandoned the contract, that his right to proceed is terminated, it waives or loses its right to stipulated damages. In such a case the Government does not exercise a choice, but simply accepts a situation brought about by the action of the contractor. Art. 9 contemplates that the Government must on its own initiative exercise a choice before it will be held to have waived its right to claim liquidated damages. Art. 9 gives the Government three grounds for terminating the contractor’s right to proceed and I think all the grounds contemplate the exercise of that right while the contractor is continuing with the work, not after he has voluntarily stopped and notified the Government that he cannot complete it. The fact that the contractor in such a case may ask the contracting officer to terminate his right to proceed is immaterial so far as the right of the Government to liquidate its damages under art. 9 is concerned. When the contractor notifies the Government without justifiable cause that he cannot proceed with the work and abandons it, as this contractor did, he has committed a total breach of his express agreement set forth in art. 9 to the effect that if the Government does not terminate the right to proceed he will continue with the work and complete it. This, of course, can mean only that if after consideration of the continuous delay after the contract completion date the Government does not exercise its option to terminate the right to proceed, the contractor cannot do so. The contractor probably hoped to escape liquidated damages, but the contracting officer based his notice of June TT on the default of the contractor and not strictly under art. 9. This' is made clear by the fact that the contracting officer sent the notice only after the surety had declined to complete and advised the surety, as well as the contractor, that its right to proceed was terminated. Certainly this was not required under art. 9.
*694 The first option, or choice, to terminate given the Government bj art. 9 is: “If the contractor refuses or fails to prosecute the work with such diligence as will insure its completion within the time specified in art. 1, or any extension thereof.” The second is: If the contractor “fails to complete said work within such time.” These two- grounds are separate and distinct. When the date for completion has passed, the Government no longer exercises the choice given it under the first ground. The second ground is not a part of the first. The first ground for termination contemplates not that the contractor can commit a total breach by abandoning the work and refusing to proceed at all with it, thereby escaping liquidated damages if the Government is unable to complete the work before the contract date for completion, but a refusal or failure of the contractor while continuing the work to make such progress or to prosecute it with such diligence as will insure the timely completion of the work. I think the word “refuses” used in the first sentence of art. 9 contemplates a refusal of the contractor to comply with a demand or instruction of the Government for better progress or greater diligence.
The second ground for termination is simply stated by the contract to be a failure of the contractor to complete on time. This is a continuing option of the Government which, if satisfactory progress is not made, it may, as a third choice, exercise or not as it may choose. If the work is not completed on time and the Government does not terminate the right to proceed when the completion date arrives, the Government continues thereafter to have the right to terminate for continuous delays or unsatisfactory progress.
To say that a contractor in order to escape liquidated damages might desire to have his right to proceed terminated and make such poor progress as to force the Government to terminate it, is immaterial; that was not what happened here. In such case the Government might elect to terminate and claim actual damages for delay if it could prove them, or it might elect not to terminate because of poor progress deliberately, or otherwise, and hold the surety *695 for liquidated damages. The contract here involved called for levee work which the Government probably would have considered not to be of sufficient urgency to justify termination of the contractor’s right to proceed, because of poor progress, and, since the Government was adequately protected by the liquidated damage clause and bond, it could and doubtless would have permitted the contractor to continue until it had completed the work. The surety was always in a position to step in and protect its interests by assisting the contractor. Magoba Construction Co. v. United States, 99 C. Cls. 662.
Under the facts in this case it seems clear to me that the Government did not terminate under any choice within the meaning of art. 9; that article expressly provided that the contractor must continue with the work after the completion date had passed — the exact language being that “If the Government does not terminate the right to proceed, the contractor shall continue with the work.” Under this provision the contractor expressly agreed not to abandon the work before its completion, but to continue with it and complete it even though late. In this case the contractor refused to comply with this provision and, by such refusal, it and the surety became liable for the stipulated liquidated damages to date of abandonment and until such date as the Government might, by acting with reasonable promptness, have completed the work, and also for excess costs of completion. A contractor cannot escape liquidated damages by claiming a waiver based on its act of abandoning the work or declining to proceed with it as required by the contract and after being ordered to do so.
In these circumstances the letter of June 17, from the contracting officer was the usual notice required by one party when the other party is guilty of a total breach of the contract. Prior to the contractor’s default in a manner not contemplated and authorized by the contract it had only partially breached the contract and the Government had elected to proceed with performance until completion by the contractor and to hold it and the surety for liquidated damages as therein provided. In order to constitute a waiver of *696 liquidated damages the termination of the right to proceed must, as I have said, arise from an act of the Government which brings about a cessation of work by the contractor and prohibits him from proceeding further while the contractor is proceeding with construction and has indicated no intention of abandoning the work. To hold otherwise would be contrary to the express terms and conditions of art. 9. It is highly improbable, to say the least, that the parties to the contract could have intended by the language of art. 9 to put it in the power of the contractor, by an absolute breach, tb exempt itself from payment of agreed liquidated damages whether the Government did or did not elect to complete. After the contractor had abandoned the work and the surety had declined to complete, no further notice was necessary; the fact that notice of default was subsequently given did not change the previously existing and fixed rights and liabilities of the parties under the contract. If, after the contractor’s notice of abandonment and after the Government had notified the surety that the contractor had “defaulted the contract,” the contractor had come back and asked permission to be allowed to resume operations and complete, its right to do so would have depended entirely upon the then willingness of the Government to permit it to do so and not upon any right which the contractor could claim under art. 9 or any provision of the contract.
At the time the contractor decided not to perform further and notified the Government it could not complete the contract, the rights of the parties became fixed without any further action on the part of the Government other than notice that it held the contractor in default. That, I think, was the notice which was intended and which was in fact given by the Government. United States v. U. S. Fidelity & Guaranty Co., 236 U. S. 512; Board of Education of City of Asbury Park v. Maryland Casualty Co. of Baltimore, Md., 27 Fed. (2d) 20; Continental Casualty Co. v. United States, 113 Fed. (2d) 284, 285. See, also, The Philadelphia, Wilmington, and Baltimore Railroad Co. v. Howard, 13 How. 307, 339-341; United States v. Quinn, 99 U. S. 30, 32; United States v. O'Brien, 220 U. S. 322, 328.
*697 On the question of the amount of liquidated damages to which the Government is entitled under the facts in this case, it appears that from the completion dates for the two items of levee work in question to January 6, 1937, a delay of 59 days was properly chargeable to the contractor and that the liquidated damages to that date amount to $1,180. If the Government is not entitled to this amount it can recover only the engineering and inspection costs for this period since the nature of the work was such that it is impossible to prove other actual damages, as the parties had stipulated.
With reference to delay thereafter in getting the unfinished work completed, for which delay the Government also claims liquidated damages, it appears that the Government did not advertise for bids for completion until September 20, 1937. This was eighty-five days after the notice of June 17, 1937. I think this was an unreasonable delay in the circumstances. The Government acting with reasonable promptness should have been able to advertise for bids for completion within ten days after June 17, 1937, or by June 27. Bids were received October 4, 1937, and the new contract for completion was awarded to Jones & Shepard October 22, 1937. This •contractor proceeded with all possible diligence and completed the work on item L-275 on November 9,1937, and that ■on item R-365-A on December 26, 1937.
I am of opinion that the defendant is entitled to recover liquidated damages at the rate of twenty dollars a day, in addition to the amount of $1,180, for delay from May 11, 1937, on each item of work, until the dates on which the two items of work were completed, as above stated, less 85 days from June 27 to September 20, 1937, during which period the Government delayed unreasonably in readvertising for bids for completion of the work. The delay in completion properly chargeable to the contractor and its surety was therefore 97 days with respect to item L-275, completed November 9, 1937, and 144 days with respect to item R-365-A, completed December 26, 1937. The amount of liquidated damages due under the contract for the 97 days’ additional delay chargeable to the contractor with respect to L-275 is .$1,940, and the liquidated damages so due for the 144 days’ *698 delay with respect to item R-365-A is $2,880. The total liquidated damages to which the Government is entitled under the contract for the total delay in completion beyond the date fixed by the contract properly chargeable to the contractor and the surety is, therefore, $4,060.
The parties have stipulated that the actual excess cost of completion over the original contract price was $514.02. The Government was entitled under the contract to charge the plaintiff, as surety on the contractor’s bond, this amount of $514.02 in addition to the liquidated damages of $4,060 above mentioned, which'makes a total of $4,574.02. Since the Government was entitled in the circumstances to charge the agreed liquidated damages for all the delay in completion properly chargeable to the contractor and surety, it was not entitled to charge them by way of actual damages with expenditures for engineering and inspection costs amounting to $1,690.80, which costs would have been incurred in any event if the contractor had completed the work within the same period of time the Government took to complete it after it had relet the contract. The Government does not now claim these inspection and engineering costs of $1,690.80 in addition to the liquidated damages to date of completion, but claims only the actual excess completion costs of $514.02. If the Government is not entitled in the circumstances to the liquidated damages after May 11, 1937, it is, of course, entitled to the inspection and engineering costs of $1,690.80 as the only actual damages it can prove, in addition to the excess costs of completion. Since the amount of liquidated damages of $1,180, excess costs of completion of $514.02, and the engineering and inspection costs of $1,690.80, totaling $3,384.82 (finding 13), which the Government charged to plaintiff under its bond, are $1,189.20 less than it was entitled to charge under the proper interpretation of the contract, the plaintiff is not entitled to recover the $1,180 liquidated damages included in these charges. Plaintiff’s petition should therefore be dismissed, and judgment rendered for defendant for $1,189.20.
Although the Government has not filed -a formal written counterclaim, it does expressly claim in its brief and oral argument liquidated damages at the contract rate to the *699 date on which the two items of work were completed by Jones & Shepard. We have jurisdiction under section 145 of the Judicial Code to enter judgment in favor of the Government for the amount to which it is still entitled under the contract without the filing of a formal written counterclaim. Chicago, Burlington & Quincy R. R. v. United State, 73 C. Cls. 250, cert. den. 287 U. S. 599; Vulcanite Portland Cement Co. v. United States, 74 C. Cls. 692; American Sanitary Rag Co. v. United States, 84 C. Cls. 417.
If a formal counterclaim is deemed desirable or necessary, the defendant should have leave to amend its general traverse by the filing of a formal counterclaim to conform to the proof, and to the claim made in its brief and oral argument. No statute of limitation precludes the Government from filing a formal counterclaim at this time.
Judgment should therefore be entered in favor of the Government and against the plaintiff for $1,189.20, and costs.